UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JAMIE L. WILDEN, et al.,                                                                                       Plaintiffs,

v.                                                                                     Civil Action No. 3:13-cv-784-DJH-CHL

LAURY TRANSPORTATION, LLC, et al.,                                      Defendants.

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

Plaintiffs claim that Defendant Great Dane Limited Partnership's truck-trailer design failed to reasonably protect them when their car collided with Great Dane's trailer. (Docket No. 45) To maintain what is commonly known as a crashworthiness claim under Kentucky law, Plaintiffs must offer an "alternative safer design, practical under the circumstances." *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 41 (Ky. 2004). In support of their proposed alternative design, Plaintiffs rely on the opinions of two experts. (D.N. 162) Great Dane has moved to exclude both expert opinions and for summary judgment, arguing that the expert opinions are inadmissible and without those opinions the Plaintiffs lack any evidence of a feasible alternative design to Great Dane's trailer. (D.N. 126, 127) Having concluded that Plaintiffs' expert opinions are unreliable and thus inadmissible, the Court will exclude the opinions under Federal Rule of Evidence 702. Consequently, the Court will also grant summary judgment for Great Dane because Plaintiffs have failed to establish an essential element of their claim.

## I.     BACKGROUND

On June 24, 2013, a truck-trailer driven by former Defendant Dwight Weisner allegedly failed to yield the right-of-way and crossed oncoming traffic to make a left turn onto the northbound side of Greenbelt Highway in Louisville, Kentucky.  (D.N. 45, PageID # 254; D.N. 126-1, PageID # 891; D.N. 162, PageID # 2102; *see* D.N. 162-1, PageID # 2124)  At that time, Janice Wilden was driving a 1995 Chevrolet Lumina southbound with her infant son in the back seat.  (D.N. 162, PageID # 2103; D.N. 162-1, PageID # 2120)  Wilden's car crashed into the Great Dane trailer.  The Chevrolet's right-front edge struck the left back tandem axel[1] of the trailer, and the remainder of the car went underneath the trailer, pushing past the windshield, a type of car-and-truck collision known as "underride."  (D.N. 126-2, PageID # 891; D.N. 162-1, PageID # 2120)  The trailer's rear wheels were in their most rearward possible position at the time of the crash.  (D.N. 126-4, PageID # 1026; *see* D.N. 163-2, PageID # 2104)  Perry Ponder, Plaintiffs' expert, estimates that Wilden was traveling at 38 miles per hour and at a 63-degree angle relative to the trailer's roadside floor rail when she struck the trailer.  (D.N. 164-1, PageID # 3377)  Wilden's injuries were severe; her son's injuries, if any, are unknown to the Court.  (*See* D.N. 124-2, PageID # 781; D.N. 127-1, PageID # 1189; D.N. 162)

Wilden's legal guardian, Tanya Wilden, and her son's legal guardian, Jacob Yeager, sued.[2]  (D.N. 1)  The only remaining defendant in this action is Great Dane Limited Partnership, against which Plaintiffs assert a product liability claim under Kentucky law—specifically, a crashworthiness claim.  (D.N. 45, PageID # 255-57)  The Plaintiffs' claim relies on the testimony of two experts, Perry Ponder and Bruce Enz, to demonstrate a feasible alternative design to Great

---

[1] A tandem axle is two sets of axles, each with a set of wheels—one right behind the other.  *See* FHWA Truck Size and Weight Definitions, 23 C.F.R. § 658.5 (2016).
[2] Jamie L. Wilden was later substituted in place of Tanya Wilden as legal guardian of Janice Wilden.  (D.N. 180)

Dane's trailer. (D.N. 162, PageID # 2097, 2101) The proposed alternative design is a telescoping side guard designed to prevent underride. A telescoping side guard is "a horizontal bar underneath the side of the trailer that would expand or slide rearward as the trailer tandems are repositioned rearward underneath the trailer." (D.N. 126-4, PageID # 996) Because the trailer's wheels were in the "most rearward possible position" (D.N. 126-4, PageID # 1026), a 78-inch gap existed between the tires and a side guard that Enz had created prior to this lawsuit; this side guard was not on the truck, but it could have been offered as an alternative design if not for the gap. (*See* D.N. 126-4, PageID # 1026; D.N. 163-1, PageID # 3153) Wilden's car was 72 inches wide. (*See* D.N. 126-1, PageID # 901)[3] To fill this gap, Ponder and Enz propose a telescoping bar that would extend the side guard to the rear wheels. (D.N. 163-1, PageID # 3153; D.N. 164-1, PageID # 3379)

Great Dane has moved to exclude the opinions of Ponder and Enz; it also seeks summary judgment. (D.N. 126, 127) Great Dane claims that Ponder and Enz failed to disclose the underlying data for their expert reports in violation of Federal Rule of Civil Procedure 26, and thus the Court should exclude their opinions. (*See* D.N. 126-1) It further maintains that even if Ponder's and Enz's opinions survive its Rule 26 challenge, the opinions should be excluded as unreliable under Federal Rule of Evidence 702. (*See id.*) Finally, Great Dane contends that it is entitled to summary judgment irrespective of the admissibility of Plaintiffs' experts' opinions. (*See* D.N. 127-1, PageID # 1174-75) The Court need not address Great Dane's Rule 26 argument because it finds Ponder's and Enz's opinions to be unreliable and thus inadmissible

---

[3] Great Dane cites Exhibit 29 to Ponder's deposition to support this fact, but the attached deposition in the record excludes exhibits due to size. (D.N. 126-1, PageID # 901; D.N. 126-4) Nevertheless, Plaintiffs do not dispute this fact.

3

under FRE 702. In the absence of reliable opinion testimony on an alternative design, Plaintiffs' claim against Great Dane fails.

## II. Analysis Pursuant to Evidence Rule 702

"A district court should not make a *Daubert* ruling prematurely, but should only do so when the record is complete enough to measure the proffered testimony against the proper standards of liability and relevance." *Jahn v. Equine Servs.*, 233 F.3d 382, 393 (6th Cir. 2000). "Usually, the record upon which the trial court will make an admissibility decision without a hearing will consist of the expert reports, affidavits, depositions, briefs of the parties, and the like." *Food Lion, LLC v. Dean Foods* (*In re Se. Milk Antitrust Litig.*), No. 2:08-MD-1000, 2012 WL 947106, at *2 (E.D. Tenn. Mar. 20, 2012). The record here consists of expert reports by Ponder and Enz (D.N. 126-2, 126-3), depositions by Ponder and Enz (D.N. 126-4, 126-5), and briefing by the parties (D.N. 126, 163, 164, 171). This is sufficient. *See Food Lion*, 2012 WL 947106, at *2. The Court will therefore make a *Daubert* finding without a hearing.

> A witness is qualified to testify as an expert in the form of an opinion if
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A district court judge is required to act as a "gatekeeper . . . imbued with discretion in determining whether or not a proposed expert's testimony is admissible, based on whether it is both relevant and reliable." *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007) (citation omitted). The only contested issue here is whether Ponder's and Enz's testimonies may be deemed reliable under FRE 702. (D.N. 126-1, PageID # 890-91)

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court provided a non-exhaustive list of factors that the Court may consider when acting in its gatekeeping role. *Johnson*, 484 F.3d at 429 (quoting *Daubert*, 509 U.S. at 592-94). These factors include

> (1) whether a "theory or technique . . . can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) whether, with respect to a particular technique, there is a high "known or potential rate of error" and whether there are "standards controlling the technique's operation"; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community."

*Id*. Later, in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court clarified that these factors are applicable in the context of "engineering" testimony. *Id*. at 147-49. In *Johnson*, the Sixth Circuit emphasized that trial judges have flexibility in determining which factors to apply; in that case, the court examined the first and fourth *Daubert* factors and added a "prepared-solely-for-litigation" factor. 484 F.3d at 430. This Court will do the same because, as in *Johnson*, there is little if any published or peer-reviewed information regarding the proposed alternative design and the third factor is irrelevant to the case at hand. *See id*.

**A.    The Testing Factor**

The Sixth Circuit anticipates that the testing requirement might be met if the expert has "significant technical expertise in the specific area in which he is suggesting an alternative design." *Id*. at 431 (citations omitted). But in *Johnson*, the Sixth Circuit declined to find that the expert's technical expertise alone was enough when the expert did not have experience working on the exact machine at issue. It also noted that the "significant technical expertise" logic is not binding in the Sixth Circuit. *Id*. at 432.

Here, Ponder's and Enz's qualifications are unquestioned. (*See* D.N. 126-2, PageID # 954; D.N. 163-3) They each have extensive engineering backgrounds. (*Id*.) Ponder and Enz

also each have expertise in the area of trailer side guards. (*See* D.N. 126-2, PageID # 954-55; D.N. 163-3) Neither one of them, however, has expertise with telescoping sideguards. (D.N. 126-4, PageID # 1032-34; D.N. 126-5, PageID # 1128) Neither has built or tested a telescoping sideguard. (*Id*.) Thus, reliance on their expertise alone is insufficient. *See Johnson*, 474 F.3d at 432.

Instead, testing is necessary. "After all, 'the design of industrial equipment is a complex process and changes to prevent one problem could create other problems, thus increasing the overall danger of using a product.'" *Id*. at 431 (quoting *Brown v. Raymond Corp.*, 432 F.3d 640, 648 (6th Cir. 2005)). In some instances, the need for testing is lessened "if the proposed alternative design is simple or is already in use in the industry." *Mackenzie v. JLG Indus., Inc.*, No. 3:13-CV-1046, 2014 WL 7375546, at *7 (W.D. Ky. Dec. 29, 2014) (citation omitted). In other instances, a prototype may be necessary. *Johnson*, 484 F.3d at 433. Yet in all instances, the expert must have demonstrated the "practicality of his proposed design." *Id*.

Ponder and Enz's telescoping mechanism is neither "simple" nor "in use" in the industry. *Mackenzie*, 2014 WL 7375546, at *7; (D.N. 126-5, PageID # 1128). Moreover, Ponder and Enz failed to demonstrate the practicality of their proposed telescoping design. During his deposition, Enz discussed what a prudent engineer should have done in 1998 before selling a trailer equipped with a guard. (D.N. 126-5, PageID # 1093) This included designing and building a prototype, then extensively testing that prototype. (*Id*., PageID # 1094) Further, Enz's report relies on extensive testing of non-telescoping side guard prototypes. (D.N. 163-1, PageID # 3145-53) Yet neither Ponder or Enz built a telescoping side guard prototype. Enz acknowledged that he has not built and tested a telescoping side guard, nor is he aware of anyone in the world having built and tested a telescoping side guard. (D.N. 126-5, PageID # 1128)

6

Ponder also acknowledges that his telescoping concept has never been built and tested. (D.N. 126-4, PageID # 1032-34)

Ponder has done some testing for his hypothetical telescoping side guard, such as a Finite Element Analysis of its load-bearing capabilities (*id*., PageID # 1029)—although notably he did not use the angle at which Wilden collided with the trailer (*id*., PageID # 1063)—and calculating the weight and welding specifications (*id*., PageID # 1034, 53). Ponder failed, however, to test the telescoping side guard in other ways, such as testing the fatigue of the telescoping mechanism's welds (*id*., PageID # 1050), durability testing (*id*., PageID # 1051), or performing a static load test or dynamic crash test (D.N. 170, PageID # 3578). And Enz did not test the telescoping side guard at all, nor did he test any of his existing side guards using the particular facts of this case (D.N. 126-5, PageID # 1124); he instead relies on Ponder's tests (*id*., PageID # 1081). Moreover, though Enz opines that side guards without a telescoping mechanism would have prevented the underride, he admits that he did not test this idea, and he misstates the positioning of the rear wheels.[4] (*Id*., PageID # 1124-25) The Court concludes that Ponder's and Enz's opinions regarding proposed telescoping side guards are not sufficiently reliable in the absence of adequate testing.

Ponder and Enz's telescoping side guard testing was insufficient. Considering the complexities behind industrial equipment, *Johnson*, 484 F.3d at 431, the extensive testing necessary to prudently test underride side guards prior to retail (D.N. 126-5, PageID # 1093-94),

---

[4] Enz testified that he was relying on Ponder's accident reconstruction. (D.N. 126-5, PageID # 1081) However, he recalled that the rear wheels were "somewhere toward the center portion of the slider rail." (D.N. 126-5, PageID # 1124) Ponder testified that the wheels were in the "most rearward possible position." (D.N. 126-4, PageID # 1026) Enz then testified that "[w]ithout having done specific calculations, it appeared to me that there would have been contact with the last, at least two or three feet of the guard." (D.N. 126-5, PageID # 1124)

and the relatively minimal testing that Ponder and Enz conducted, the Court finds that this factor weighs against admitting Ponder's and Enz's testimonies.

B.     The General-Acceptance Factor

Unlike *Johnson*, where the expert's proposed alternative was accepted and in use within the relevant industry, Ponder and Enz's prototype of the proposed telescoping side guard has never been built. (D.N. 126-4, PageID # 1032; D.N. 126-5, PageID # 1128) Although Ponder's report states that the design principles have been known for a long time (*see* D.N. 164-1, PageID # 3378), this does not mean that the telescoping side guard proposed by Ponder and Enz has been accepted by their peers. Nor could it be, since it only exists as Ponder and Enz's concept. This factor therefore also weighs against admitting Ponder's and Enz's testimonies.

C.     The Prepared-Solely-for-Litigation Factor

The Sixth Circuit has recognized that "expert testimony prepared solely for purposes of litigation, as opposed to testimony flowing naturally from an expert's line of scientific research or technical work, should be viewed with some caution." *Johnson*, 484 F.3d at 434; *see also Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 408 (6th Cir. 2006) ("We have been suspicious of methodologies created for the purpose of litigation."). When analyzing this factor in *Johnson*, the Sixth Circuit noted, "[I]f a proposed expert is a quintessential expert for hire, then it seems well within a trial judge's discretion to apply the *Daubert* factors with greater rigor." 484 F.3d at 434 (internal quotation marks omitted). It then affirmed the magistrate judge's finding that expert objectivity was lacking. *Id*.

Though Ponder and Enz have each testified in similar cases (*see* D.N. 126-4, PageID # 994; D.N. 126-5, PageID # 1147-48), the Court finds no evidence that they are "quintessential expert[s] for hire." *Johnson*, 484 F.3d at 435 (internal quotation marks omitted). Nor does the

Court question their qualifications. (*See* D.N. 126-2, PageID # 954-55; D.N. 163-3) Still, the Court cannot ignore the fact that Ponder's telescoping side guard (D.N. 126-2, PageID # 948) was conceived after the start of this litigation. (D.N. 126-4, PageID # 1033) Although Ponder is adamant that the technology and concept existed (*id.*), this is of little relevance because it appears that this alternative design did not "grow[] naturally and directly out of research [the expert had] conducted independent of [this] litigation." *Johnson*, 484 F.3d at 434-35 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995)). Instead, it appears that the telescoping bar was added onto a side guard after the start of this litigation to make up for the gap between a hypothetical side guard and the rear wheels, which is exactly where Wilden hit Great Dane's trailer.

There is some evidence that Enz developed the concept of an extension to a side guard in 2006. (D.N. 126-5, PageID # 1129) Yet Enz clearly states that it was not a telescoping extension. (*Id.*) Ponder agrees. (D.N. 126-4, PageID # 1033) This is why Enz is developing a new side guard, known as "Generation III," that includes a telescoping section. (D.N. 126-5, PageID # 1129) There is also a 1984 UK patent that appears to utilize a type of telescoping side guard. (D.N. 162-23, PageID # 2854) But that guard was designed "in order to prevent pedestrians, cyclists, motorcyclists, animals and other obstacles [from] passing beneath the vehicle and being run over by the rear wheels," and it requires that the telescoped member be bolted or welded at the required length. (*Id.*) This is not the same as the guard proposed by Ponder and Enz, which is designed to stop vehicle underride, as well as to extend and contract as a trailer's rear wheels are repositioned. (*See* D.N. 163-1, PageID # 3153)

At most, the concept of expanding a trailer's side guard merely existed before this litigation. The Court therefore considers this factor as neutral.

**D.     Conclusions on Reliability**

In sum, Ponder's and Enz's testimonies fail to meet any of the relevant *Daubert* factors. The testing was insufficient by Enz's own standards. (*See* D.N. 126-5, PageID # 1093) The proposed alternative design is not used in the relevant industry; it is new and not generally accepted. (*See* D.N. 126-4, PageID # 1032; D.N. 126-5, PageID # 1128) And even though the idea of an expanding side guard appears to have already existed (*see* D.N. 126-5, PageID # 1129), the telescoping bar was not created by Ponder or Enz prior to this litigation (D.N. 126-4, PageID # 1033). The Court therefore finds that these opinions are unreliable. As such, they are inadmissible under FRE 702.

### III.     Summary Judgment

**A.     Standard**

To grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party must then establish a genuine issue of material fact with respect to each element of each of her claims. *Id.* at 322-23; *see Johnson*, 484 F.3d at 435-36 (affirming summary judgment in favor of defendant where plaintiff's expert opinions were inadmissible). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; instead, the non-moving party must present evidence upon which the jury could reasonably find for her. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Ultimately, the Court must determine whether "the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52).

**B.     Discussion**

Without Ponder's and Enz's expert opinions to support Plaintiffs' claim, Great Dane is entitled to summary judgment. Plaintiffs allege that if Great Dane had implemented a safer alternative design, then Wilden's injuries would have been less severe. (D.N. 45, PageID # 255-57) To establish a prima facie crashworthiness claim, Plaintiffs must put forth "(1) an alternative safer design, practical under the circumstances; (2) proof of what injuries, if any, would have resulted had the alternative, safer design been used; and (3) some method of establishing the extent of enhanced injuries attributable to the defective design." *Id*.

Without Ponder's and Enz's expert opinions, Plaintiffs have failed to submit any evidence of a safer alternative design to Great Dane's trailer that was practical under the circumstances. In the absence of the proposed telescoping side guard, the 78-inch gap between the previously conceived non-telescoping side guard and the rear wheels of the trailer remains. (*See* D.N. 126-4, PageID # 1026; D.N. 163-1, PageID # 3153) As a result, Wilden's 72-inch-wide car would still have experienced underride. (*See* D.N. 126-1, PageID # 901) The Court will therefore grant summary judgment in favor of Great Dane. *Johnson*, 484 F.3d 426.

## IV.     CONCLUSION

Ponder's and Enz's opinions are unreliable and thus inadmissible. Consequently, Great Dane is entitled to summary judgment because Plaintiffs have failed to offer proof of a safer alternative design that is practical under the circumstances.

11

There are several other motions pending, including Great Dane's motion to exclude Plaintiffs' medical expert, Plaintiffs' motion to exclude several of Great Dane's experts, and motions in limine filed by each party. (D.N. 124, 125, 130, 131) Having reviewed the motions, the Court finds that they have no bearing on its decision here. Because the Court will grant summary judgment in favor of Great Dane, the Court will deny those motions as moot.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)　Defendant's motion to exclude opinion testimony by Perry Ponder and Bruce Enz (D.N. 126) is **GRANTED**.

(2)　Defendant's motion for summary judgment (D.N. 127) is **GRANTED**.

(3)　All other motions (D.N. 124, 125, 130, 131) are **DENIED** as moot.

(4)　A separate judgment will issue this date.

August 29, 2016

**David J. Hale, Judge**
**United States District Court**